**NOT FOR PUBLICATION**

IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| MOHAMMAD SHER ISLAM,<br><br>    Plaintiff,<br><br>  v.<br><br>F. GERARD HEINAUER, et al.,<br><br>    Defendants.<br>_____/ | No. C 10-04222 JSW<br><br>**ORDER DENYING MOTION TO DISMISS AND GRANTING DEFENDANTS' MOTION FOR SUMMARY JUDGMENT AND DENYING PLAINTIFF'S CROSS-MOTION FOR SUMMARY JUDGMENT** |

**INTRODUCTION**

This matter comes before the Court upon consideration of the Motion to Dismiss or, in the Alternative, Motion for Summary Judgment filed by Defendants, the United States Citizenship and Immigration Service ("USCIS"), Alejandro Mayorkas (Director of USCIS), F. Gerard Heinauer ("Heinauer") (Director of the Nebraska Service Center of the USCIS), the Department of Homeland Security ("DHS"), Janet Napolitano ("Secretary Napolitano") (Secretary of DHS), and United States Attorney General, Eric H. Holder, Jr. (the "Attorney General") (collectively "Defendants"). Plaintiff, Mohammad Sher Islam ("Islam"), has filed a Cross-Motion for Summary Judgment, which also is before the Court for consideration.

The Court considered the parties' papers, relevant legal authority, the record in this case, and took the matter under submission. For the reasons set forth herein, the Court HEREBY DENIES Defendants' motion to dismiss, GRANTS Defendants' alternative motion for summary judgment, and DENIES Plaintiff's cross-motion for summary judgment.

**BACKGROUND**

The following facts are undisputed, unless otherwise noted. Islam currently is a citizen of Pakistan. On or about April 12, 2000, Islam entered the United States without inspection, subsequently applied for asylum, and was granted asylum on March 27, 2007. (Compl., ¶¶ 1, 6, 19; Declaration of Evelyn Martin ("Martin Decl."), ¶ 3.)[1] Islam's application for asylum included information that, in 1992, he joined the Muahjir Qaumi Movement - Altaf Faction ("MQM-A"), an organization that meets the definition of a Tier III undesignated terrorist organization. (Martin Decl., ¶ 11.) According to Ms. Martin, Islam "stated that he worked for MQM [*sic*] by putting up posters explaining government led atrocities, giving messages to different members about protests or other events, taking part in demonstrations, giving money, collecting funds from other members, and setting up chairs on the stage for processions." (*Id.*)

On May 27, 2008, Islam filed a Form I-485, Application to Register Permanent Residence or Adjust Status ("I-485 Application"), which still is pending. (Compl. ¶ 1, 6, 19-21; Martin Decl., ¶ 4.) Islam was fingerprinted on July 3, 2008, and on September 15, 2009. (Martin Decl., ¶ 7.) USCIS also has completed preliminary checks of Islam in the Interagency Border Inspection System ("IBIS"), although USCIS must refresh those checks before it finalizes Islam's I-485 Application. (*Id.*, ¶¶ 6, 8.) In addition, the Federal Bureau of Investigation completed Islam's name check on June 17, 2008. (*Id.*, ¶¶ 9-10.)[2]

On December 26, 2007, the Consolidated Appropriations Act, 2008 ("CAA") was signed into law, which amended and expanded the discretionary authority of the Secretary of the Department of Homeland Security "to exempt certain terrorist-related inadmissibility grounds as they relate to Tier III terrorist organizations." (*Id.*, ¶¶ 14-22.) Ms. Martin attests that the Deputy Director of USCIS has instructed that "adjudicators should withhold

---

[1] The Martin Declaration is attached as Exhibit A to Defendants' Motion.

[2] Islam also named Robert S. Mueller, Director of the Federal Bureau of Investigation ("FBI"), as a Defendant and asserted claims against him based on alleged delays in conducting Plaintiff's background check. On May 5, 2011, Islam stated that, based on the representation that the FBI had completed his background check, he moved to dismiss all claims against Director Mueller. (Docket No. 22.) That request is GRANTED and all claims against Director Mueller are dismissed with prejudice.

2

adjudication of cases that could benefit from the Secretary's expanded discretionary authority under the CAA." (*Id.*, ¶ 15.) According to Defendants, USCIS issued policy memoranda on March 26, 2008 and July 28, 2008, respectively, which were updated on February 23, 2009. (*Id.*, ¶ 22.) In accordance with these policy memoranda, Defendants have placed Islam's I-485 Application on an administrative hold, to determine if he might qualify for an exemption, notwithstanding his associations with MQM-A. (*Id.*, ¶ 23.)

On September 17, 2010, Islam filed his Complaint, in which he asserts two claims for relief. First, Islam seeks a writ of mandamus, pursuant to 28 U.S.C. § 1361, requiring Defendants to adjudicate his I-485 Application. (Compl., ¶¶ 26-27.) Second he alleges that Defendants have violated the Administrative Procedure Act ("APA") because they have unreasonably delayed the adjudication of his I-485 Application. (*Id.* ¶¶ 28-31.) Defendants now move to dismiss for lack of subject matter jurisdiction and for failure to state a claim. In the alternative, they move for partial summary judgment on the basis that they have not unreasonably delayed in processing Islam's I-485 Application. Islam opposes the motion to dismiss and cross-moves for summary judgment on the basis that Defendants' delay in processing his I-485 Application is unreasonable as a matter of law.

**ANALYSIS**

**A.  The Court Has Jurisdiction to Consider Islam's Claims.**

**1.  Applicable Legal Standard.**

Defendants move to dismiss Islam's claims for lack of subject matter jurisdiction, pursuant to Federal Rule of Civil Procedure 12(b)(1).[3] A party moving to dismiss under Rule 12(b)(1) may make a facial or a factual attack on jurisdiction. A facial attack challenges the sufficiency of the jurisdictional allegations in a complaint. *Safe Air for Everyone v. Meyer*, 373 F.3d 1035, 1039 (9th Cir. 2004). A factual challenge, as is the case here, instead "attack[s] the substance of a complaint's jurisdictional allegations despite their formal sufficiency, and in so doing rel[ies] on affidavits or any other evidence properly before the court." *St. Clair v. City of*

---

[3] Defendants do not argue that the Court lacks subject matter jurisdiction to consider Islam's claims under the APA or Section 1361.

3

1   *Chico*, 880 F.2d 199, 201 (9th Cir. 1989) (citation omitted); *accord Safe Air*, 373 F.3d at 1039.
2   In resolving a factual attack on jurisdiction, the court "need not assume the truthfulness of the
3   plaintiff's allegations." *Id.* (citation omitted).

**1.    The Court is Not Precluded from Reviewing Islam's Claims by 8 U.S.C. § 1252(a)(2)(B)(ii).**

Defendants argue that 8 U.S.C. § 1252(a)(2)(B)(ii) precludes judicial review of Islam's claims in this case. Section 1252(a), provides, in pertinent part, that:

> Notwithstanding any other provision of law (statutory or nonstatutory), including section 2241 of Title 28, or any other habeas corpus provision, and sections 1361 and 1651 of such title, and except as provided in subparagraph (D)[4], and regardless of whether the judgment, decision, or action is made in removal proceedings, no court shall have jurisdiction to review –
>
> ...
>
> Any other decision or action of the Attorney General or the Secretary of Homeland Security the authority for which is specified under this subchapter to be in the discretion of the Attorney General or the Secretary of Homeland Security, other than the granting of relief under section 1158(a) of this Title.[5]

The Ninth Circuit has noted that this "jurisdictional bar is not to be expanded beyond its precise language." *Kwai Fun Wong v. United States*, 373 F.3d 952, 963 (9th Cir. 2004). There is a split of authority as to whether Section 1252(a)(2)(B)(ii) precludes judicial review of claims involving delays in processing I-485 applications. *Compare Al-Rifahe v. Mayorkas*, __ F. Supp. 2d __, 2011 WL 825668, at *3-*5 (D. Minn. March 7, 2011) (noting split in authority but concluding that Section 1252(a)(2)(B)(ii) does not preclude court from reviewing claims "alleging unreasonable delays in the disposition of I-458 applications of asylees associated with Tier III terrorist organizations"); *Beshir v. Holder,* __ F. Supp. 2d __, 2011 WL 204798, at *4-6 (D.D.C. Jan. 24, 2011) (fiding that Section 1252(a)(2)(B)(ii) did not

---

[4]   Section 1252(a)(2)(D) provides that nothing in subparagraph (B) "shall be construed as precluding review of constitutional claims or questions of law raised upon a petition for review filed with an appropriate court of appeals in accordance with this section."

[5]   Section 1158(a) provides authority for an alien physically present in the United States or who arrives in the United States to apply for asylum.

4

bar judicial review of plaintiff's claims); *Liu v. Chertoff*, 2007 WL 2119427, at *1-2 (N.D. Cal. July 23, 2007) (concluding court had jurisdiction to resolve mandamus claim relating to pace of adjudication of application for adjustment of status), *with Singh v. Napolitano*, 710 F. Supp. 2d 123, 129-132 (D.D.C. 2010) (concluding Section 1252(a)(2)(B)(ii) precluded judicial review of claim of withholding adjudication of I-485 application based on plaintiff's involvement with Tier II and Tier III terrorist organizations).

A number of district courts within the Ninth Circuit have concluded that this section does not preclude judicial review of the specific type of claims raised by Islam. *See, e.g., Hassane v. Holder,* 2010 WL 2425993, at *3 (W.D. Wash. June 11, 2010); *Sultan v. Roark,* 2010 WL 1992195, at *2-3 (E.D. Cal. May 13, 2010); *Khan v. Scharfen*, 2009 WL 941574, at *4-6 (N.D. Cal. April 6, 2009); *Ahmed v. Scharfen,* 2009 WL 55939, at *6-7 (N.D. Cal. Jan. 7, 2009). The Court finds the reasoning set forth in the *Kahn* and *Ahmed* cases on this issue to be persuasive. Accordingly, for the same reasons, the Court concludes that Section 1252(a)(2)(B)(ii) does not divest the Court of jurisdiction to consider Islam's claims.[6]

Defendants' motion to dismiss is DENIED IN PART on this basis.

**2. The Court is Not Precluded from Reviewing Islam's Claims by 8 U.S.C. § 1252(g).**

Defendants also argue that Section 1252(g) precludes judicial review of Islam's claims. Section 1252(g) provides that:

> Except as provided in this section and notwithstanding any other provision of law (statutory or non-statutory), including section 2241 of Title 28, or any other habeas corpus provision, and sections 1361 and 1651 of such title, no court shall have jurisdiction to hear any cause or claim by or on behalf of any alien arising from the decision or action by the Attorney General to commence proceedings, adjudicate cases, or execute removal orders against any alien under this chapter.

---

[6] Although Defendants argue that "the Secretary's determination of whether or not to exempt a person or group from the INA's terrorist activity-based inadmissibility provisions is wholly discretionary," (Def. Mem. at 11:24-26), Islam's claims do not pertain to a decision about whether or not he should be entitled to such an exemption. As such, that argument is not pertinent to the jurisdictional analysis. *See, e.g., Ahmed*, 2009 WL 55939, at *7.

5

The Supreme Court has held that this provision applies to three discrete types of "actions or decisions," that the Attorney General may take: (1) to commence proceedings; (2) to adjudicate cases; or (3) to execute removal orders. *Reno v. American Arab Anti-Discrimination League*, 525 U.S. 471, 482 (1999) ("*AADC*"); *see also Wong*, 373 F.3d at 964 ("Following *AADC,* we have narrowly construed § 1252(g).").

As with Defendant's argument regarding Section 1252(a), a number of courts have found that Section 1252(g) does not preclude judicial review of claims similar to those Islam raises. Those courts have reasoned that, in *AADC*, the Supreme Court determined that Section 1252(g), on its face, applies to removal proceedings and should be construed narrowly. *See, e.g., Sultan*, 2010 WL 1992195, at *2; *Khan*, 2009 WL 941574, at *3-4; *Ahmed*, 2009 WL 55939; *see also Hassane*, 2010 WL 2425993, at *2 ("A number of U.S. District Courts have addressed the precise issue raised by the government in lawsuits with similar factual scenarios, and it appears that every court that has addressed the issue has found that section 1252(g) does not bar judicial review.").

As in the *Sultan, Ahmed*, and *Kahn* cases, there are no removal proceedings pending against Islam. Based on the reasoning set forth those cases, and based on the fact that Section 1252(g) is to be construed narrowly, the Court concludes that Section 1252(g) does not preclude the Court from adjudicating Islam's claims.

Defendants' motion to dismiss is DENIED IN PART on that basis as well.

**B.     Islam Has Stated a Viable Claim.**

Defendants also move to dismiss Islam's Complaint for failure to state a claim on the basis that the delay in this case actually inures to Islam's benefit and on the basis that Islam's allegations relating to his request for injunctive relief are conclusory. A motion to dismiss is proper under Federal Rule of Civil Procedure 12(b)(6) where the pleadings fail to state a claim upon which relief can be granted. The complaint is construed in the light most favorable to the non-moving party and all material allegations in the complaint are taken to be true. *Sanders v. Kennedy*, 794 F.2d 478, 481 (9th Cir. 1986). However, even under the liberal pleading standard of Federal Rule of Civil Procedure 8(a)(2), "a plaintiff's obligation

6

to provide the 'grounds' of his 'entitle[ment] to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (citing *Papasan v. Allain*, 478 U.S. 265, 286 (1986)).

In the *Hassane* case, *supra*, the defendants argued that the plaintiff failed to state a claim, because he "suffered no prejudice as a result of the delays by USCIS in deciding his application for an adjustment of status, and indeed has benefitted from the delay, because without the exercise of the Secretary's discretion in his case, his application will likely be denied." *Hassane*, 2010 WL 2429553, at *3. The court rejected this argument and denied the motion, reasoning that, taking the allegations in the light most favorable to the plaintiff, it was "possible that [the plaintiff] will benefit by having a final adjudication of his application...." *Id.*, 2010 WL 2429553, at *4.

In this case, Islam alleges that "[l]awful permanent resident status confers many advantages over asylee status," including the ability to reside and work permanently in the United States, to travel freely outside the United States, and to petition to immigrate close family members. (Compl. ¶ 16.) Islam also alleges that he has been aggrieved by Defendants' failure to take action on his I-485 Application. Taking the facts in the light most favorable to Islam, the Court finds that it is not only possible - it is plausible - that Islam could benefit from a final adjudication on his I-485 application. Further, the Court concludes the allegations are sufficient to state a claim for injunctive relief.

Accordingly, Defendants' motion to dismiss is DENIED IN PART on this basis.

**C.   The Court Grants Defendants' Motion for Summary Judgment and Denies Islam's Cross-Motion.**

   **1.   Applicable Legal Standard.**

Summary judgment is proper when the "pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). An issue is "genuine" only if there is sufficient

7

1 evidence for a reasonable fact finder to find for the non-moving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248-49 (1986). A fact is "material" if the fact may affect the outcome of the case. *Id*. at 248. "In considering a motion for summary judgment, the court may not weigh the evidence or make credibility determinations, and is required to draw all inferences in a light most favorable to the non-moving party." *Freeman v. Arpaio*, 125 F.3d 732, 735 (9th Cir. 1997).

A principal purpose of the summary judgment procedure is to identify and dispose of factually unsupported claims. *Celotex Corp. v. Cattrett*, 477 U.S. 317, 323-24 (1986). The party moving for summary judgment bears the initial burden of identifying those portions of the pleadings, discovery, and affidavits which demonstrate the absence of a genuine issue of material fact. *Id.* at 323. Where the moving party will have the burden of proof on an issue at trial, it must affirmatively demonstrate that no reasonable trier of fact could find other than for the moving party. *Id.* Once the moving party meets this initial burden, the non-moving party must go beyond the pleadings and by its own evidence "set forth specific facts showing that there is a genuine issue for trial." Fed. R. Civ. P. 56(e). The non-moving party must "identify with reasonable particularity the evidence that precludes summary judgment." *Keenan v. Allan*, 91 F.3d 1275, 1279 (9th Cir. 1996) (quoting *Richards v. Combined Ins. Co.*, 55 F.3d 247, 251 (7th Cir. 1995)) (stating that it is not a district court's task to "scour the record in search of a genuine issue of triable fact"). If the non-moving party fails to make this showing, the moving party is entitled to judgment as a matter of law. *Celotex*, 477 U.S. at 323.

**2.     The Court shall address Islam's Cross-Motion for Summary Judgment.**

Defendants have moved to strike Islam's cross-motion for summary judgment on the basis that it was untimely. Islam filed his Complaint on September 17, 2010. On that same day, the Court issued a "Procedural Order for Immigration and Mandamus Cases ("Procedural Order")" (Docket No. 3.) Pursuant to that Order, Defendants were required to serve and file an answer within 60 days of receipt of service of the summons and complaint. The Procedural Order also provides that "[i]f the plaintiff has not filed a motion for summary judgment within 90 days of filing the complaint, the defendant shall be the party who shall first file a motion

8

1  for summary judgment, and the defendant must serve and file that motion within 120 days of
2  service of the complaint." (Procedural Order ¶ 3.) The Procedural Order also provides that
3  when the Defendant files a motion for summary judgment, "[u]nless a motion pursuant to
4  Federal Rule of Civil Procedure 56(f) is filed, the plaintiff shall serve and file any opposition
5  and/or counter-motion within 30 days of service of defendant's motion." (*Id.* ¶ 4.) The
6  Procedural Order then sets forth the schedule to be followed if a plaintiff files a cross-motion
7  for summary judgment, and states that "for scheduling purposes, motions shall be noticed in
8  accordance with Civil Local Rule 7-2." (*Id.* ¶¶ 5-7.) Local Rule 7-2, in turn, requires that all
9  motions be noticed for hearing no earlier than 35 days from the date on which the motion is
10 filed. The Procedural Order does not, however, provide for a specific briefing schedule if the
11 defendant files a motion to dismiss.

12 Islam did not file a motion for summary judgment within 90 days of filing the
13 Complaint. However, it is unclear whether his failure to do so was based upon the parties
14 stipulation permitting the Defendants additional time to respond to the Complaint. (*See*
15 Docket Nos. 9-10.) Defendants filed their motion first, and Islam filed his cross-motion in
16 response. Although Islam's cross-motion was not filed thirty-five days before the hearing
17 date, Defendants did not seek to continue the hearing, and they did not seek additional time to
18 file their opposition brief. In addition, in previous filings, Defendants did not suggest that
19 Islam had failed to comply with the deadlines set forth in the Procedural Order. (*See, e.g.,*
20 Docket Nos. 9, 12, 14.) Finally, Defendants filed a timely opposition and reply on April 22,
21 2011, and they have not established that they would be prejudiced if the Court considers
22 Islam's cross-motion. Accordingly, although that motion was not filed and noticed for
23 hearing in accordance with Local Rule 7-2, in the interests of judicial efficiency and economy,
24 the Court shall consider Islam's cross-motion.

25 Defendants' request to strike the motion as untimely or to deny the motion on that
26 basis is DENIED.
27 //
28 //

9

### 3. **Defendants Have Not Unreasonably Delayed.**

The Court now turns to the merits of this case. In order to evaluate the reasonableness of the delay in processing Islam's I-485 Application, the Court is guided by the *"TRAC"* factors. *See Independence Mining Co., Inc. v. Babbitt*, 105 F.3d 502, 507 n.7 (9th Cir. 2007) (quoting *Telecommunications Research & Action v. F.C.C.*, 750 F.2d 70, 79-80 (D.C. Cir. 1984)). Those factors are:

> (1) the time agencies take to make decisions must be governed by a "rule of reason;" (2) where Congress has provided a timetable or other indication of the speed with which it expects the agency to proceed in the enabling statute, that statutory scheme may supply content for this rule of reason; (3) delays that might be reasonable in the sphere or economic regulation are less tolerable when human health and welfare are at stake; (4) the court should consider the effect of expediting delayed action on agency activities of a higher or competing priority; (5) the court should also take into account the nature and extent of the interests prejudiced by the delay; and (6) the court need not "find any impropriety lurking behind agency lassitude in order to hold that agency action is unreasonably delayed."

*Id.*[7]

The issues raised by Islam are not unique, and some district courts have granted relief to plaintiffs who are in Islam's situation. However, in those cases, the plaintiffs' applications had been pending far longer than the almost three years that Islam's I-485 Application has

---

[7] Islam argues that because he was granted asylee status, the immigration judge necessarily concluded that his activities with MQM-A were not a bar to admissibility. Thus, Islam relies on the doctrine of issue preclusion to argue that Defendants "are barred from relying on the notion that, as a result of [Islam's] terrorism-based inadmissibility, the delay in adjudicating his adjustment application is justifiable," and indeed contends that "he cannot be barred from adjustment on a terrorism-based ground." (Pl. Opp. Br. and Cross-Motion at 10:1-2, 5 (emphasis omitted).) The Court is not persuaded. Apart from Ms. Martin's declaration which recounts certain information from Islam's application for asylum, there is no evidence in the record pertaining to those proceedings. Therefore, the Court cannot evaluate what issues - if any - were raised and decided in that hearing. Second, although the parties agree that, in some circumstances, the doctrine of issue preclusion may apply to immigration proceedings, Islam offers no authority to support the proposition that a person who has been granted asylum would automatically qualify for adjustment of status. Indeed, the statute governing adjustment of status suggests otherwise. That statute provides, *inter alia*, "the Attorney General ... *may* adjust to the status of an alien lawfully admitted for permanent residence the status of any alien granted asylum who – has been physically present in the United States for at least one year after being granted asylum, ... and is admissible ... as an immigrant under this chapter *at the time of examination for adjustment of such alien*." 8 U.S.C. § 1159(b)(2), (5). On the existing record, the Court concludes that Islam has failed to meet his burden to show that issue preclusion bars consideration of Defendants' arguments regarding Islam's activities with the MQM-A.

10

been pending. *See, e.g., Al-Rifahe*, __ F. Supp. 2d __, 2011 WL 825668, at *7-9 (delay of thirteen years unreasonable); *AlShamsawi v. Holder,* 2011 WL 1870284, at *2-4 (D. Utah May 16, 2011) (applying factors similar to *TRAC* factors and concluding that six year delay was unreasoanble); *Al-Karim v. Holder*, 2010 WL 1254840, at *3-5 (D. Colo. March 29, 2010) (applying factors similar to *TRAC* factors and finding that Defendants unreasonably delayed in processing I-485 application filed in 2002, which included a six year delay in resolving name check). These conclusions are not universal. *See, e.g, Debba v. Heinauer*, 366 Fed. Appx. 696, 699 (8th Cir. 2010) (concluding approximately ten year delay in processing I-485 application was not unreasonable); *Shata v. USCIS*, 8:08CV74 (D. Neb. March 23, 2010) (concluding that seven year delay was not unreasonable).[8] Other courts have concluded that delays ranging from eight months to almost two years are not unreasonable. *See, e.g., Hassane,* 2010 WL 2425993, at *4-5 (finding 22 month delay not unreasonable); *Khan,* 2009 WL 941574, at *8-9 (one year delay not unreasonable); *Singh v. Heinauer*, 2008 WL 5110862, at *3 (W.D. Wash. Dec. 3, 2008) (finding eight month delay after case was reopened not unreasonable).

What constitutes an unreasonable delay in the context of immigration applications depends to a great extent on the facts of the particular case." *Gelfer v. Chertoff*, 2007 WL 902382, at *2 (N.D. Cal. March 22, 2007) (quoting *Yu v. Brown*, 36 F. Supp. 2d 922, 935 (D.N.M. 1999)). Having considered the authorities cited above, and having applied the *TRAC* factors to this case, the Court concludes that Defendants have not unreasonably delayed in processing Islam's I-485 Application.

With respect to the first and second factors, Section 1159 does not set forth a specific time by which an application for an adjustment of status must be processed. Congress has provided that "the processing of an immigration benefit application should be completed not later than 180 days after the initial filing of the application ...." 8 U.S.C. § 1571(b). It is

---

[8] Defendants cite *Patel v. Holder*, No. 09-20459 (S.D. Fla. March 23, 2010) for the proposition that a 10 year delay was not unreasonable. (Defs. Mem. at 21 n.11.) However, the *Patel* court determined that it did not have jurisdiction to review the case and, thus, did not reach the merits of whether the delay was unreasonable.

11

undisputed that more than 180 days have passed since Islam filed his application, and that fact would weigh in his favor.

Section 1182(d)(3)(B)(I) does not contain a specific time frame by which a decision relating to whether to grant an exemption for persons who would be inadmissible based on their association with a Tier III non-designated terrorist organization.[9] However, that subsection of Section 1182, requires consultation between the Secretary of State, the Attorney General, and the Secretary of Homeland Security in order to determine whether a particular group or individual should be entitled to an exemption. Defendants argue and attest that this is a complex and time consuming process. (*See* Def. Mem. at 16:24-17:3; Martin Decl., ¶ 16.)

In addition, Defendants attest that they recently have issued discretionary exemptions relating to various organizations, other than the MQM-A, and they attest that they anticipate "additional guidance relating to the adjudication processes for Plaintiff's type of case (non-duress material support to a Tier III organization for which no group exemption exists) will be issued in the near future." (*See* Martin Decl., ¶¶ 16-24.) Islam puts forth no evidence to counter these assertions. As Judge Conti stated in the *Khan* case, *supra*, "[o]ne would hope" that decisions such as these are "not made lightly." *Khan*, 2009 WL 941574, at *9. This Court also "recognizes that [the decision] may be time-consuming." *Id.*; *see also Al-Rihafe*, 2011 WL 825668, at *7 (noting that the court "has no reason to disbelieve the government's assertions that the exemption process is a lengthy one requiring 'significant agency consultation,'" but finding thirteen year delay in processing I-485 application unreasonable). On the facts of this case, the Court finds that the first two factors, as well as the fourth factor, ultimately weigh in the Defendants' favor.

The third and fifth factors overlap, and the Court shall evaluate them together. It is undisputed that Islam had a work permit that expired on April 18, 2011, and it is undisputed that his travel permit will expire on May 27, 2011. (Martin Decl., ¶ 27.) Thus, his ability to

---

[9] Neither party refers to 8 C.F.R. § 103.2(b)(18), which sets forth procedures relating to withholding adjudication of applications. Although that regulation does not set forth specific deadlines by which applications must be completed, it does provide for continued review of applications as to which adjudication has been withheld.

12

work and travel freely has been impacted by the delay associated with processing his application. Defendants again argue that Islam benefits from the delay, because if his case were to be adjudicated now, it is likely that Defendants would deny his I-485 Application. Islam counters by arguing that even if his application were denied, he could either reapply for adjustment of status or would seek judicial review of the decision.

However, Islam has admitted to being a member of MQM-A. It is undisputed that the reason Islam's I-485 Application has been placed on hold is based on the implementation of the CAA and the memoranda giving guidance on adjudication of cases involving persons who might benefit from an exemption. (*See* Martin Decl., ¶¶ 14-25.) These facts distinguish this case from cases involving the failure to process name checks, where courts have concluded that two to four year delays are unreasonable. *See, e.g., Wang v. Chertoff*, 550 F. Supp. 2d 1253, 1259-60 (W.D. Wa. 2009); *Wang v. Gonzales*, 2007 WL 4463009, at *3 (N.D. Cal. Dec. 17, 2007) (concluding two year delay presumptively unreasonable); *Liu v. Chertoff*, 2007 WL 2433337, at *5-6 (E.D. Cal. Aug. 22, 2007); *cf. Khan*, 2009 WL 941574, at *8 ("[T]he situation is distinguishable from the now-typical case involving a delay in processing an applicant's FBI background check. In many of those cases, there are no facts specific to the applicant which are causing the delay, or which implicate national security concerns."). Defendants do not seriously contest that the regulations at issue impact health and human welfare, and it is clear to this Court that there are important interests at stake for both parties. On balance, the Court does not find that these factors tip strongly in favor of either party.

With respect to the sixth factor, although "the court need not 'find any impropriety lurking behind agency lassitude in order to hold that agency action is unreasonably delayed,'" *Independence Mining*, 105 F.3d at 507 n.7 (quoting *TRAC*, 750 F.2d at 80), there are no allegations of impropriety in this case. Therefore, the Court finds that this factor weighs in the Defendants favor.

Although the Court can foresee a point at which the delay in ruling on Islam's I-485 Application would be unreasonable, based on the existing record, that time has not yet come.

13

Accordingly, the Court concludes that Defendants have not unreasonably delayed in processing Islam's I-485 Application.

**CONCLUSION**

For the foregoing reasons, Defendants' motion to dismiss is DENIED, Defendants' motion for summary judgment is GRANTED, and Islam's cross-motion for summary judgment is DENIED. The Court shall issue a separate judgment, and the Clerk shall close the file.

**IT IS SO ORDERED.**

Dated: May 25, 2011

JEFFREY S. WHITE
UNITED STATES DISTRICT JUDGE